United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

No. 04-11143

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

IGNACIO LARES-MERAZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:

Ignacio Lares-Meraz appeals his sentence on the grounds that his constitutional rights were violated under *United States v. Booker*, 543 U.S. 220 (2005). During the pendency of his appeal, Lares-Meraz served twelve months' imprisonment, was released, and was deported to his native Mexico. Lares-Meraz remains subject to a three-year term of supervised release, an element of his total sentence. This Court ordered supplemental briefing on the issue of mootness in light of Lares-Meraz's release and deportation. We conclude that Lares-Meraz's appeal is not moot, and because Lares-

Meraz expressly concedes that any error in sentencing is harmless and requests affirmance of his sentence, we affirm.

I.

Lares-Meraz was indicted for illegal reentry into the United States after prior deportation, a violation of 8 U.S.C. § 1326. He was charged with reentry "on or about March 10, 2004." Lares-Meraz pleaded guilty, and in association with his guilty plea, Lares-Meraz signed a factual resume which stated that he had been found in the United States on November 28, 2003.[1] At his guilty plea, Lares-Meraz again affirmed the accuracy of the factual stipulation.

The presentence report ("PSR") reflected that Lares-Meraz entered the United States illegally on February 10, 2002, and accordingly his criminal history calculation included two additional points because the commission of the instant offense was commenced less than two years after Lares-Meraz's prior release for imprisonment for illegal entry. *See* UNITED STATES SENTENCING GUIDELINES § 4A1.1(b), (e).[2] The PSR also included an additional criminal

---

[1]In the factual resume, the typed March 10, 2004 date was crossed out, and the November 28, 2003 date was hand-written above it. These changes were initialed by Lares-Meraz, his counsel, and counsel for the government. The presentence report also gives November 28, 2003 as the date, relevant to the instant offense, upon which Lares-Meraz was found in the United States by a federal agent.

[2]The underlying offense giving rise to this two-point increase in criminal history was a July 30, 2001 judgment entered upon Lares-Meraz's guilty plea in the Western District of Texas for illegal entry. On that plea, Lares-Meraz was sentenced, according to the PSR, to 180 days in custody and deported to Mexico on November 15, 2001. The PSR and factual resume

history point for a prior Colorado conviction of driving while impaired. *See id.* § 4A1.1(c). Lares-Meraz's PSR calculated a total of seven criminal history points and a criminal history category of IV. These calculations, combined with a total offense level of six, resulted in a guidelines sentencing range of six to twelve months' imprisonment. Lares-Meraz objected to the calculation before the district court under *Blakely v. Washington*, 542 U.S. 296 (2004). The court overruled the objection and sentenced him to twelve months' imprisonment and three years' supervised release.

Lares-Meraz argues that the criminal history calculations resulted in an unconstitutional sentence because the PSR's date of offense (February 10, 2002) was used, rather than the November 28, 2003 date that was admitted by Lares-Meraz in the factual resume, to increase the points of his criminal history calculation. Both the one-point and two-point increases to his criminal history calculation, according to Lares-Meraz, were based upon these facts that were neither found by a jury beyond a reasonable doubt nor admitted by him.

The records of the Federal Bureau of Prisons indicate that

---

potentially conflict regarding the date of Lares-Meraz's most recent illegal entry offense. The two criminal history points were added for an offense that produced deportation on November 15, 2001; other information suggests that Lares-Meraz was deported more recently on January 24, 2002, and that he subsequently reentered the United States on February 10, 2002.

Lares-Meraz was released on March 8, 2005, and defense counsel admits that Lares-Meraz was deported to Mexico and that his whereabouts are unknown.

## II.

"A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation. A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999) (citations omitted). "Accordingly, an actual, live controversy must remain at all stages of federal court proceedings, both at the trial and appellate levels. That is, the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *De La O v. Hous. Auth. of El Paso*, 417 F.3d 495, 499 (5th Cir.) (internal quotation marks and citations omitted), *cert. denied*, 126 S. Ct. 808 (2005); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *United States v. Clark*, 193 F.3d 845, 847 (5th Cir. 1999).

Whether an appeal is moot is a jurisdictional issue because it implicates Article III's requirement of a live case or controversy. *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987). This Court must raise the question of mootness *sua sponte* when, as here, it is not raised by a party, and the Court reviews the question *de novo*. *See Donovan v. Air Trans., Dist. Lodge No. 146*, 754 F.2d

4

621, 624 (5th Cir. 1985); *see also Bailey*, 821 F.2d at 278. The parties responded to this Court's order for supplemental briefing on this issue.

To the extent a defendant appeals his conviction, his appeal is not moot simply because his term of imprisonment has expired. *See Spencer*, 523 U.S. at 7. Neither is Lares-Meraz's challenge to his sentence moot because he remains subject to a term of supervised release, an element of the overall sentence. *See Clark*, 193 F.3d at 847.

Generally, a term of supervised release is not immune to modification by the district court. A district court may have the authority to modify conditions of supervised release under 18 U.S.C. § 3583(e)(2), or the authority to terminate obligations of supervised release, after the expiration of one year of supervised release, under § 3583(e)(1). *See United States v. Johnson*, 529 U.S. 53, 59 (2000); *see also Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006); *United States v. Hernandez*, No. 05-40729, 2006 U.S. App. LEXIS 6876 (5th Cir. Mar. 20, 2006); *United States v. Benavides*, 145 F. App'x 971 (5th Cir. 2005). In addition, on this record the government and defense counsel agree that Lares-Meraz's subjection to the terms of supervised release satisfy an ongoing consequence that is a sufficient legal interest to support Article III's case or controversy requirement; although this Court will not rely upon the parties' stipulation to find that Article III

5

jurisdiction exists. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). Lares-Meraz's appeal is not moot.

## III.

Lares-Meraz preserved his objection under *Booker* before the district court by objecting to the calculation of criminal history score based upon facts in the PSR that were not admitted by Lares-Meraz. Therefore, our review is for harmful error under Federal Rule of Criminal Procedure 52(a). *United States v. Pineiro*, 410 F.3d 282, 284 (5th Cir. 2005); *United States v. Mares*, 402 F.3d 511, 520 n.9 (5th Cir. 2005). Rule 52(a) provides that "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error is deemed harmless only if the government proves beyond a reasonable doubt that the error did not contribute to the sentence that the defendant received. *United States v. Woods*, 440 F.3d 255, 280 (5th Cir. 2006); *United States v. Freeman*, 434 F.3d 369, 381-82 (5th Cir. 2005).

In supplemental briefing, both defense counsel and the government argue that the error here, while harmful in theory because it affected Lares-Meraz's substantial rights at the time, is an error that is now, practically speaking, harmless because Lares-Meraz has served his imprisonment term and because the terms of his supervised release require that he not reenter the United

6

States illegally and subject him to additional penalty for failure to comply.[3]

In *United States v. Benavides*, 145 F. App'x 971 (5th Cir. 2005), the defendant's sentence was vacated and the case remanded for resentencing because the government failed to show harmless *Booker* error and because although Benavides had already served his imprisonment term and been released, the district court retained discretion to consider equitable factors under the United States Code or to modify or terminate the term of supervised release. *See id.* at 973. (citing 18 U.S.C. § 3583(e)(1)-(2)). *Benavides* did not resolve the question of statutory modification of or termination of supervised release and instead remanded the issues for the district court's consideration in the first instance. *Id.* at 972-73. The instant case, however, differs materially from *Benavides* because Benavides was neither deported upon release, nor did he concede that any error at the time of disposition on appeal was harmless.

On this atypical record, Lares-Meraz concedes that the error was harmless. The Government agrees. On such a record, Lares-

---

[3]In original briefing, Lares-Meraz argued that the calculation of his criminal history points and category, and imposition of sentence based upon the relevant guideline range, was harmful error because in the absence of the error, he would have been subject to a criminal history category of III, producing a guideline range of two to eight months. However, in supplemental briefing, Lares-Meraz expressly abandons this position and argues that the district court's error, while subject to harmless error review, was harmful at the time but is now practically harmless as a result of deportation and the unknown location of Lares-Meraz.

Meraz cannot be heard to complain that he was harmed by the district court's error.

IV.

Based upon the foregoing, we AFFIRM the sentence.